**Exhibit A**

**_FISI v. Samsung_, No. 2:17-cv-145-JRG (E.D. Tex.)**
**FISI's Briefing on Disputed Provisions of the**
**Protective Order**

**Introduction**

On June 14, FISI proposed to Samsung as well as LG and Huawei identical protective orders modeled after the one this Court entered in *TiVo v. Samsung*, 2:15-cv-1503-JRG, Dkt. 55 (E.D. Tex. April 21, 2016), which is in turn based on this Court's standard protective order for patent cases. FISI was therefore surprised when, after two weeks of waiting, Samsung refused to even comment on FISI's proposal.[1] Instead, Samsung originally proposed an entirely different protective order that departed completely in structure and substance from this Court's standard protective order and FISI's proposal.[2]

With one exception (to address Related Actions), Samsung previously stipulated to the provisions it now disputes, or its objections to those provisions were overruled by this Court. *See TiVo*, No. 2:15-cv-1503-JRG, Dkt. 45-1 (Ex. A-1); Dkt. 55 (Ex. A-2). FISI's proposals either follow this Court's standard, or minimally and reasonably expand on that standard to avoid future disputes and to streamline discovery. Samsung's proposal, by

---

[1] During that period, the parties met and conferred twice on the protective order issue. Both times, Samsung refused to even explain to FISI what elements of Court's standard protective order it took issue with. *See* Ex. A-3. FISI had to remind Samsung on multiple occasions that the July 7 deadline could not be extended "absent extraordinary circumstances." *See id*.

[2] Samsung based its original proposal on the protective order entered in *Fujinomaki v. Google*, No. 2:15-cv-1381, Dkt. 101 (E.D. Tex. Jan. 25, 2016), which was transferred to No. 3:16-cv-3137 (N.D. Cal.) shortly thereafter. Plaintiff Fujinomaki was an individual assignee of the sole asserted patent, and stipulated to all of the provisions at issue here. Fujinomaki came to realize that the order he had agreed to was untenable due to what he described as the "extreme and unreasonable positions" that Samsung and others took in interpreting the PO's terms. *See Fujinomaki*, Dkt. 224 (Ex. A-9). FISI's proposals are in part to address these foreseeable issues. *See id*.; *infra* Parts I.C., I.F., I.G.4.; Proposed Protective Order ("PPO"), ¶¶ 12(c), (f), (l).

contrast, will have the effect of slowing and complicating discovery, particularly with respect to source code, and thus should be rejected. *See Document Generation Corp. v. Allscripts, LLC*, 2009 WL 1766096, at *2 (E.D. Tex. June 23, 2009) (Where "parties to an action agree on entry of a protective order but differ on the order's terms, the party seeking to limit discovery bears the burden of demonstrating that good cause exists for the protection of that information [by] demonstrate[ing] 'a clearly defined and serious injury to the party seeking closure.'") (quoting *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994)).

It appears that Samsung is conscious of the fact that its stark change in position between this case and the *TiVo v. Samsung* case is not on strong ground. Samsung had proposed to exchange drafts of this briefing well in advance of the filing deadline. FISI agreed. Samsung then refused to comply with its own agreement and stated that it would not exchange the brief until 11 p.m. Central Time. This effectively prevents FISI from understanding the basis for Samsung's positions and forthrightly addressing any valid concerns Samsung may have. In effect, Samsung is blocking FISI from scrutinizing and testing the arguments Samsung intends to make to the Court.

**I. Source Code**

Numerous aspects of Samsung's proposal regarding source code will have the effect of making discovery extremely costly, difficult and slow. A protective order should not be a tool that gives one party a strategic advantage in the litigation. Consistent with this, FISI based its proposals on the *TiVo v. Samsung* protective order. This order is particularly informative because, in that case, both TiVo and Samsung anticipated inspecting each other's source code. As a result, Samsung had an incentive in *TiVo* to craft a reasonable proposal. Counsel for FISI negotiated and operated under the *TiVo v. Samsung* order.

### A. Availability of Source Code at Appropriate Depositions (Paragraph 12(l))

FISI proposes that the same source code already offered for inspection be available at depositions of witnesses who would otherwise be permitted access to such source code. *See* PPO, ¶ 12 (l). This will allow attorneys and deponents to search through, scroll through, and otherwise analyze the code during depositions, enabling meaningful questioning regarding the code. This provision is critical to the efficient preparation of this case, and without it, FISI would be severely prejudiced in its ability to explore and understand Samsung's vast code base. Without a native copy of source code available at depositions, discovery into source code would be vastly limited, and the parties may be caught in a "gotcha" situation, where a witness who has relevant knowledge about source code cannot testify about it solely because a party did not select that particular piece of code for printing pursuant to other agreed provisions of the Protective Order. Likewise, without it, the witness may not be able to trace the code or efficiently find the relevant portions that the questioner seeks, wasting valuable time. Any argument by Samsung that printouts alone are sufficient for depositions thus lacks merit, under FISI's proposal regarding printouts or otherwise.

FISI's proposal mirrors provisions that governed Samsung in *TiVo v. Samsung*, and numerous other TiVo cases before it, including litigations between TiVo and Cisco, Motorola, AT&T, and Verizon . *See* Ex. A-2, ¶ 10(k); Ex. A-4, ¶ 29.k.iv.; Ex. A-5, ¶ 28.k.5.; Ex. A-6, ¶ 28.i.5.; Ex. A-7, ¶ 28.j.4. Both TiVo and its opponents in those actions took advantage of this provision, and both fact and expert witnesses at numerous depositions across the country were questioned using a native copy of source code without any threat to the code's security. There is no reason not to follow the same protocol here.

This provision does not risk the security of code. The people who would see the inspection code at depositions <u>already have access</u> to exactly the same code outside the deposition context. *See* PPO, ¶¶ 12(e), 16. Further belying Samsung's concerns over the security of its code, pursuant to FISI's proposed provision, Samsung itself would be in exclusive possession of the inspection code provided at depositions, which can be transported by Samsung personnel or attorneys in a secure manner, including protections such as, for example, encryption technology.

### B. Protocol for Printing Source Code (Paragraphs 12(i))

FISI proposes, consistent with the Court's default, that the source code printouts be limited to those files that FISI "believes in good faith are necessary to understand a relevant feature of an accused instrumentality." *See* PPO, ¶ 12(i). Moreover, FISI has agreed to a procedure for Samsung to challenge those requests if they deem any to be unreasonable. *See id*. FISI, however, expects such challenges to rarely arise.

Samsung proposes instead that FISI be precluded from requesting printouts of source code of more than 27 consecutive pages, and 500 total aggregate pages over the duration of the entire case, except with "prior written approval by the producing party." *See* PPO, ¶ 12(i). At this early stage, when Samsung is still withholding <u>all</u> of its source code from inspection, FISI should not be forced to blindly agree to an arbitrary limit on the number of source code pages that may be printed. *See Constellation Techs. LLC v. Time Warner Cable Inc.*, No. 2:13-cv-1079-RSP, Dkts. 83-1 (Ex. A-13), 97 (Ex. A-12), ¶ 10(j) (E.D. Tex. June 24, 2014) (rejecting consecutive and aggregate code printout page limits); *Blue Calypso, Inc. v. Groupon*, No. 6:12-cv-486, Dkt. 157, at 3 (E.D. Tex., Oct. 24, 2013) ("Without knowing the length or volume of the source code Materials that Yelp will be required to produce, any page limitation that is chosen in a vacuum will be arbitrary.") (Ex. A-15); *see also*

*Bluebonnet Telecomms. L.L.C. v. Sony Ericsson Mobile Comms. (USA) Inc.*, No. 2:13-cv-505-JRG, Dkt. 34, at 2–3 (Mar. 12, 2014) (denying request for page limitations on source code printouts) (Ex. A-14). As noted in FISI's discovery briefing, this case involves an array of technologies and accused products, each of which may reflect numerous sets and versions of source code. *See* Dkt. 46-2. Depending on how Samsung chooses to write and format its code, a single module demonstrating infringement of a single claim element could span many tens or hundreds of different printed pages while actually containing very limited actual text. Given the complexity of this case, Samsung's arbitrary cap is sure to lead to constant disputes between the parties and this Court's repeated adjudication of the same disputes. This is not an efficient use of this Court's or FISI's limited resources and appears designed to impede and interfere with FISI's preparation of this case. Indeed, in *TiVo v. Samsung*, Samsung did not object when TiVo's print request resulted in twelve boxes (over 30,000 pages) of paper, because in the context of that case it was reasonable. *See* Ex. A-8.

Moreover, Samsung's position that FISI should bear the burden of moving the Court to justify its requests for the partial production of a set of admittedly relevant documents that have already been produced in discovery turns the rules governing discovery on their head. *See Constellation*, No. 2:13-cv-1079-RSP, Dkts. 83-1, 97, ¶ 10(j) (ordering that "[t]he Producing Party shall have the burden to move the Court and show that the request is unreasonable," rejecting the opposite proposal, similar to Samsung's) (Exs. A-13 and A-12). Samsung's proposed language does not require it to seek Court protection if it deems a request unreasonable. It can simply filibuster.

Samsung's proposal also inappropriately limits what can be printed from the stand-alone computer. FISI's proposal confirms that "documents reflecting information about Source Code" may be printed, in addition to the source code files themselves. *See id.* For

example, it may be necessary to print listings of source code files to identify metadata such as the date on which each file was modified, or to print reports from one of the software tools that must be installed on the stand-alone computer. Samsung could refuse to print such relevant and discoverable information based on its proposal, which again would undermine FISI's ability to conduct reasonably scoped discovery. *See id*. (printouts limited to "Source Code").

The Court should reject Samsung's gamesmanship and deny its proposal to arbitrarily limit the number and nature of permissible printouts of source code.

**C. Use of Laptops for Note Taking During Inspection (Paragraph 12(f))**

FISI seeks to use laptops—and only laptops, i.e., no other electronic devices—during source code inspection "for the sole purpose of typing notes related to source code review." *See* PPO, ¶ 12(f); Ex. A-1, ¶ 10(e). This is the same procedure Samsung agreed to in *TiVo v. Samsung*. Per FISI's proposal, these laptops must have "no picture taking or video recording capability" to prevent even the possibility of copying source code other than by taking transcribed notes. *See id*. To further limit the extent of code reflected in notes taken on such laptops, the reviewers "may not copy more than ten (10) consecutive lines of the RESTRICTED CONFIDENTIAL SOURCE CODE into the notes." *See id*. The notes further must be "securely stored on the laptop by the receiving Party in a manner consistent with the provisions of this Order," *e.g.*, by storing them in encrypted form. *See id*.

Persons who review computerized source code not surprisingly use computers while conducting that review. Requiring reviewers to take to pen and paper to track their analysis of complex, highly technical source code, and to record handwritten notes of citations to source code file path names, which are themselves typically long, complex, contain unusual characters, and must be reproduced exactly to identify source code for printing, is designed

to burden and impede FISI's source code inspection. Prohibiting laptops in the review room will merely hinder the efficient prosecution of this case, without adequately balancing any need for additional or enhanced protection. *See Bluebonnet Telecomms. LLC v. Sony Ericsson Mobile Communications (USA) Inc*., No. 2:13-cv-00505-JRG, Dkt. 34 at 2–3 (E.D. Tex., March 12, 2014) ("[Sony] notes that its source code is highly confidential and argues that its security requires specific page limitations on printing and a limitation on the presence of electronic devices when reviewing source code. The Court disagrees.") (Ex. A-14); *Rockstar Consortium US LP v. Google Inc*., No. 2:13-cv-893, Dkts. 80-1, 90 at ¶ 11(a) (E.D. Tex., June 19, 2014) (adopting protective order that specifically allowed laptops in source code room over defendant's objection) (Exs. A-10 & A-11).

Samsung's proposal, by contrast, forbids the use of laptops, and requires that all notes be taken on paper. *See* PPO, ¶ 12(f). In addition to being extraordinarily burdensome and inefficient, this proposal is less safe. Unlike notes stored on laptops in FISI's proposal, written notes cannot be encrypted.

Samsung initially proposed prohibiting copying "<u>any portion</u> of the Source Code into the notes." The evening before the filing deadline, Samsung instead proposed that source code reviewers be prohibited from copying "an entire line or more of the Source Code into the notes." It modified the language again the afternoon of the filing deadline, precluding "any lines" from being copied into the notes, which would appear to allow less than a line of code to be noted. *See* PPO, ¶ 12(f). Samsung's proposal makes its position perplexing. Samsung now acknowledges not only that copying some source code into reviewer notes is reasonably necessary, but that such copying does not inherently pose an inappropriate security risk. Samsung's position must therefore hinge on the theory that copying less than a line of source code into notes is sufficiently secure, but copying ten lines of source code

into notes is not. Samsung bears the burden of making this showing, and general assertions regarding code security are insufficient. *See Document Generation Corp.*, 2009 WL 1766096, at *2.

First, given Samsung's proposal that notes must be taken on paper, Samsung would be responsible under its proposals for creating any risk of disclosure of the information in code notes. *See* PPO, ¶ 12(f). Under FISI's proposal, of course, code notes would be secured in an encrypted electronic file, effectively eliminating any security concerns. *See id.* Moreover, Samsung has already agreed that entire code files may be printed out on paper, directly contradicting its professed concerns regarding a fractional portion of code reflected in paper notes. Samsung simply seeks to unreasonably restrict FISI's ability to take appropriate notes during code review, something Samsung was entitled to do in *TiVo v. Samsung*. *See* Ex. A-2, ¶ 10(e).

The Court should reject Samsung's strategically motivated and unreasonable proposals.

**D. Other Provisions Governing Source Code**

Samsung's proposal reflects numerous other inappropriate or improper provisions, all of which the Court should reject in favor of FISI's reasonable proposals.

1.  <u>Number of Stand-Alone Computers (Paragraph 12(a))</u>: Just as the parties stipulated in *TiVo v. Samsung*, FISI proposes that source code be offered on "at least two" stand-alone computers, where Samsung seeks to limit FISI's inspection to only a "single" computer. *See* PPO, ¶ 12(a); Ex. A-2, ¶ 10(a). Given the size of Samsung's codebase, it is perfectly reasonable to require at least two, and possibly more stand-alone computers. For example, in *TiVo v. Samsung*, Samsung offered the same source code on as many as four computers at the same time. Certain of those computers were used solely to scan and index

Samsung's massive codebase, and could not be used for any other purpose while that process was running. Multiple computers are critically important to effective and efficient source code review especially given the anticipated volume of source code that needs to be reviewed in this action.

2. <u>Configuration of Stand-Alone Computers (Paragraph 12(a))</u>: FISI proposes that the stand-alone computers "be equipped with two, at least twenty-two inch (22"), widescreen LCD monitors, a full-size keyboard, and a mouse," just as they were in *TiVo v. Samsung* by Samsung's stipulation. *See* PPO, ¶ 12(a); Ex. A-1, ¶ 10(a). This configuration is common for workplace computing solutions, and critically important for intensive review of source code. Reviewers need to be able to view many windows at the same time, such as the file explorer listing all of the source code files, the text of certain source code files, and the output of one or more of the various software tools that must be installed on the stand-alone computers. This requires two monitors, and a full-size keyboard and mouse to navigate between all of those windows efficiently. Samsung's proposal originally barred the use of "any input/output device" such as larger monitors, mice, and keyboards. During meet and confer Samsung offered to properly configure the stand-alone computer only if there is only one such computer. This offer emphasizes the strategic nature of Samsung's positions.

3. <u>Photocopies of Source Code Printouts (Paragraphs 12(i), (j), (k))</u>: Just as in this Court's standard source code provisions, FISI's proposal allows for the creation of a reasonable number of photocopies of printouts of source code. *See* PPO, ¶ 12(i); *see also* ¶¶ 12(j) & (k). In contrast, Samsung limits FISI to requesting no more than two subsets of the printed code. This makes no sense given that Samsung agrees that up to seven experts can access the source code. The Court should adopt FISI's proposal, which mirrors the

Court's default. The idea that printouts need to be circulated serially among experts is inefficient and appears designed to increase costs and delay discovery.

    4.    <u>Presumption of Harm for Violation of Protective Order (Paragraph 12(m))</u>: Samsung proposes that "[a]ny violation of paragraph 12 by the receiving party shall be deemed to have caused harm to the producing party." *See* PPO, ¶ 12(m). FISI understands the need to maintain the security of Samsung's source code, and has proposed provisions strictly limiting how source code may be accessed and handled. The consequences of failure to honor those provisions can be severe. To suggest, however, that even inadvertent or harmless conduct inconsistent with any minute aspect of any of the numerous source code provisions "shall be deemed to have caused harm to the producing party" goes too far. Samsung's proposal is unnecessary and usurps the Court's power to enforce its orders. Indeed, although Samsung pays the lip service to coordination with LG and Huawei on the protective order (*see* Ex. A-3), it is FISI's understanding that LG and Huawei choose not to include this provision.

## II. **Protocol for Disclosing and Resolving Third Party Objections (Paragraph 24)**

FISI proposes, as Samsung stipulated in *TiVo v. Samsung*, that the parties identify third parties who have an interest in discovery materials that restrict a party's ability to disclose those materials in this action. *See* PPO, ¶ 24; Ex. A-1, ¶ 22. The provision is designed to encourage the early identification and disclosure of such third party confidentiality issues, and to impose a timeframe over which those issues must be resolved. *See id*. The provision requires third parties who object to disclosure of their confidential information to come to the table and discuss a solution, rather than allowing them to sit in obscurity and isolation while the production of relevant discovery is delayed. *See id*. Only where the third party decides that its objection requires consideration by this Court may a

party withhold discovery materials. *See id*. The provision was used extensively by both sides in *TiVo v. Samsung*, and was effective at facilitating the prompt production of discovery despite a multitude of impacted third parties.

### III. Use Of Protected Material In Other Proceedings (Paragraph 37)

In communications, Samsung pays lip service to the concept that there should be coordination between related actions. *See* Ex. A-3. But as a matter of practice, Samsung refuses to take common sense approaches that would actually facilitate coordination. In fact, Samsung's proposal expressly bars coordinated discovery. *See* PPO, ¶¶ 5(a), 9 (protected material may be used only for purposes of this litigation, and not for any other purpose, "including without limitation any other litigation, patent prosecution or acquisition, patent reexamination or reissue proceedings").

By contrast, to promote coordination between actions filed abroad involving foreign counterparts to the asserted patents and similar accused products sold abroad, FISI added to the *TiVo v. Samsung* order its proposal that protected material produced by Samsung and FISI only (but not those by third parties) be available for use in those foreign actions. *See* PPO, ¶ 37. Pursuant to Section 299 of the German Act on Civil Procedure, protected materials filed with the court may be accessed, over the parties' objection, only by third parties who have demonstrated a legal interest in those materials to the satisfaction of the President of the court and only after the President has determined that this legal interest outweigh the parties' interest in keeping the information (*e.g.*, its trade secrets) away from the public. *See* German Federal Supreme Court, decision of 5 April 2006, Docket No. 20 VA 20/15; *Schilling* in Cepl/Voß, Prozesskommentar zum Gewerblichen Rechtsschutz, 1st edition, Sec. 299 recital 37 (the mere fact that a third party is a defendant in a comparable case does not constitute a legal interest); *see* decision of the Administrative Court

Düsseldorf of 7 July 2016 in case 20 K 5425/15 (no third party inspection of the files when trade secrets were at issue).  Given that the protections in Related Actions afforded similar protection to materials designated under this Court's protective order, there does not appear to be a legitimate reason for Samsung to oppose FISI's proposed cross-use provision.