# Exhibit B
*Samsung's positions for the disputed provisions of the proposed protective order*

### A. Source code provisions

FISI has proposed a number of provisions for the production and review of source code that add unnecessary complexity and expense for the producing party, and more importantly put the producing party's source code—the party's crown jewels—at an unnecessary risk. FISI's proposals in this regard are one-sided because FISI, as a non-practicing entity, likely has no source code to produce in this litigation. In ruling on these proposals, Samsung particularly notes for the Court's attention both the ease of inadvertent disclosure of electronic files such as source code, as well as the catastrophic harm to Samsung that would result if its source code was disclosed.[1] Samsung's concern is more acute given that Plaintiff also seeks to share Samsung's highly confidential information—including its source code—in German litigations (*see* Section B below). These concerns should be balanced against any alleged inconvenience to FISI, which would be *de minimis*. On balance, the Court should adopt Samsung's proposals, and reject those from FISI.[2]

### 1. Note taking on a laptop computer

Samsung proposes that any source code reviewers take notes only in dedicated paper notebooks. This common-sense approach provides a layer of necessary security for Samsung's source code, and has been adopted by Courts in this District. *Affinity Labs of Texas, LLC v. Samsung Elec. Co., Ltd.*, No. 1-12-CV-557, Dkt. 115 at 4 (E.D. Tex. Oct. 29, 2013) ("prohibiting

---

[1] These concerns also apply to third parties that produce source code pursuant to a subpoena.

[2] Because FISI requests that the defendants in this litigation and in FISI's litigation against LG and Hauwei coordinate during discovery, (Case No. 2:16-CV-01425-JRG-RSP), Samsung respectfully requests that the Court decide the issues between these two cases together.

electronic devices" in the same room as the source code computer and allowing only "bound notebooks for the purpose of note-taking during examination.") (Ex. B-1).

By contrast, FISI proposes that its source code reviewers be permitted to bring a laptop computer into the source code review room to take notes. But allowing electronic note-taking would unnecessarily jeopardize the security of highly sensitive and confidential information at the core of Samsung's business by a creating a heightened and very real risk of inadvertent disclosure that cannot be effectively mitigated through safeguards. The respective interests at the heart of this dispute are immense risk to Samsung if the security of its source code is compromised versus inconvenience to FISI's counsel and experts if they are required to write notes by hand.

Source code is among the most guarded business assets in the world.[3] Should Samsung's confidential source code be disclosed, the harm to its competitive position would be devastating.[4] Because source code is so valuable, and the consequences of its disclosure so grave, the parties agree that source code shall be offered for inspection only on a stand-alone computer that "may not be linked to any network, including a local area network ('LAN'), an intranet or the Internet)," that is password protected and maintained in a secure, locked area, and that "[n]o other electronic devices shall be permitted in the secure room, including but not

---

[3] *See*, *e.g.*, *Via Vadis Controlling GmbH v. Skype, Inc.*, No. 1:12-mc-193, 2013 WL 646236, at *3 (D. Del. Feb. 21, 2013) ("Source code[] [is] the most sensitive and confidential property," and "extreme measures are ordered to protect [its] confidentiality"); *Adobe Sys. Inc. v. Macromedia, Inc.*, No. 1:00-cv-743, 2001 WL 1414843, at *1 (D. Del. Nov. 5, 2001) ("[T]he source codes . . . are of critical importance to [the party's] business and must be provided the highest form of protection a court can provide in the context of a particular case.").

[4] *Viacom Int'l. Inc. v. YouTube Inc.*, 253 F.R.D. 256, 259 (S.D.N.Y. 2008) ("Someone with access to [source code] could readily perceive its basic design principles, and cause catastrophic competitive harm . . . by sharing them with others who might create their own programs without making the same investment").

limited to laptops, floppy disks or drives, zip drives, cellular telephones, personal digital assistants, Blackberries, cameras, voice recorders, Dictaphones, telephone jacks, USB memory sticks, any other camera-enabled devices, CDs, portable hard drives, or any devices that can access the Internet or any other network or external system." PO ¶¶ 12(a), 12(f).[5] FISI's proposal, however, renders these protections a nullity.

There are inherent dangers to electronic possession and storage that do not exist, and cannot be alleviated, in the same manner as with paper records. A modern laptop has a camera, may access the Internet, use software that has the functionality of a telephone, act as a voice recorder, and may act as a storage drive. To the extent that FISI proposes that all of this functionality be disabled, it would be impossible for Samsung to ensure compliance.[6] This is especially true once the laptop containing notes describing Samsung's source code is removed from the source code room. Samsung would have no way of knowing whether the laptop is later networked, which could lead to the inadvertent disclosure of Samsung's source code. Such inadvertent disclosure can occur through error (the slip of a finger), through security breach (virus or hacking), from the very nature of electronic records (persisting in ghost files, back-up files, or metadata), or otherwise. Such risks inherent in electronic records are much greater than the limited risk presented by a paper record in the possession of counsel. For these reasons, Courts in this District routinely hold that laptop computers are not allowed in the source code review rooms. *See*, *e.g.*, *Geotag, Inc. v. Frontier Comm'n Corp.*, No. 2:10-cv-570, 2013 U.S.

---

[5] As used herein "PO" refers to the parties proposed protective order, which is attached to the parties' joint motion.

[6] Samsung is not impugning either FISI's or its reviewer's reputations or character—these provisions are expressly in place because any disclosure of Samsung's source code, accidental or otherwise, will cause irreparable harm to Samsung. FISI should not be permitted to render these protections a nullity.

3

Dist. LEXIS 25774, at *261 (E.D. Tex. Jan. 8, 2013) ("The Court is unconvinced that sufficient review of Defendants' source code requires a . . . note-taking computer. In light of the highly confidential nature of the source code, allowing these devices within the secure room would significantly increase the possibility of inadvertent disclosure."); *Affinity Labs*, No. 1-12-CV-557, Dkt. 115 at 4 ("prohibiting electronic devices" in the same room as the source code computer and allowing only "bound notebooks for the purpose of note-taking during examination.") (Ex. B-1).  In short, Samsung's proposal strikes an appropriate balance by providing FISI with ample access to source code materials without creating a heightened security risk to Samsung's core proprietary information.

### 2.     Copying lines of source code

Samsung proposes that, while a source code reviewer is permitted to take notes, the reviewer may not directly copy any lines of source code (regardless of whether the reviewer takes notes on a laptop as FISI proposes or in a notebook as proposed by Samsung).  This proposal is a common-sense protection, which balances the reviewer's need to take notes with Samsung's need to protect its source code, which as described above is one of Samsung's most confidential and valuable assets.  FISI has no need for its source code reviewers to make their own copies of any lines of source code, because the proposed protective order provides in paragraph 12(i) that FISI may have whole pages of source code printed for the use of itself and its experts.  Rather than referring to their transcriptions of the source code in their notes, they can just look at the printed pages. Those printed pages will be subject to protection for the producing party, including the safe storage and handling of the printed pages, a mechanism for the producing party to object to a request for printed pages, and under Samsung's proposal a limit on the number of consecutive and aggregate pages that may be printed.  Under Samsung's proposal, a reviewer may still take notes in pseudo code, generally describing the variables, functions, line

4

numbers, and other aspects of Samsung's source code. The only limitation is that the notes—which are afforded less protection than source code printouts—may not contain verbatim lines of code that could be copied to Samsung's detriment if those lines are inadvertently disclosed. This is an appropriate balance of the need for protection against the need for copies of code.

FISI's proposal by contrast seeks to bypass the printout process and associated protections by allowing FISI's reviewers to copy up to ten (10) consecutive lines of source code on their own. PO ¶ 12(f). Under FISI's proposal, its source code reviewers could copy nearly the entirety of Samsung's produced source code so long as they skip every eleventh line of code. Samsung would have no mechanism to object and no knowledge as to what was copied, and there would no page limits for this copying. FISI should not be allowed to circumvent the protections applicable to the printing process, and to subject Samsung's source code to the resulting increased risk of disclosure. FISI's proposal becomes even more dangerous when combined with its proposal, also in paragraph 12(f), that notes containing copied code be taken on a laptop computer. That would, in effect, allow a reviewer the opportunity to put large quantities of Samsung's produced source code in electronic form on a laptop over which Samsung has no control, leaving Samsung helpless to guard its source code from disclosure. For all of these reasons, the Court should accept Samsung's proposal.

### 1.     Printing and photocopying of pages of source code

In paragraph 12(i), Samsung agrees that the reviewing party should be permitted to print pages of source code, but proposes reasonable limits on that printing by providing that the receiving party may not print more than 27 consecutive pages, or an aggregate total of more than 500 pages. This strikes a reasonable balance between the need to protect Samsung's source code from disclosure and the desire of FISI to print pages to prosecute its case. Indeed, much more stringent restrictions have been adopted by this Court. *See SecureNet Sols. Grp., LLC v. Agent*

5

*Video Intelligence, Inc.*, No. 2:15-cv-01857-JRG-RSP, Dkt. 97 (E.D. Tex. May 20, 2016) (resolving a dispute on the number of printed pages to a total of 125 total pages of source code) (Ex. B-2); *see also id.* at Dkt. 67 (showing that plaintiff requested more printed pages) (Ex. B-3). Samsung's proposal further permits FISI to request additional printouts above and beyond the stated limits, if necessary. PO ¶ 12(i).

FISI's proposal, by contrast, provides no limits on the number of pages that may be printed, other than that the number of pages be "reasonable." FISI could claim that it is "reasonable" to print the entirety of Samsung's source code production, and then force a dispute that the Court would have to decide. The danger of FISI's proposal is compounded by its further proposal that, should Samsung object to a request to print source code, Samsung bears the burden of showing that the printed portions are excessive and/or are not requested for a permitted purpose. Samsung's proposal reflects a common-sense limit on the amount of source code that may be printed, and once established, the burden should be on the party seeking additional printed pages to demonstrate why those additional pages are needed. FISI should not be permitted to bypass the protections afforded by the stand-alone computer based source code review process by allowing the entirety of Samsung's source code to exist in paper form in FISI's control under the guise that such production is "reasonable." For this reason, the Court should reject FISI's proposal.

FISI's proposal is even more dangerous because, in paragraphs 12(i), (j), (k) and (l), it allows photocopying of the printed source code pages, again with no numerical limit and subject only to the requirement that the photocopying be "reasonable." Samsung's proposal strikes the right balance in paragraph 12(i) by allowing FISI to request up to two additional sets of source code printouts, after the initial set. Three copies of the source code printouts should fully suffice

for any conceivable needs of FISI's attorneys and experts. The unmonitored creation of potentially numerous additional photocopies creates an unnecessary risk of disclosure and abuse, whether accidental or otherwise. The Court should reject FISI's proposals to be allowed to create photocopies of the printed source code beyond the three copies allowed to be printed under Samsung's proposal.

### 2. Source code computer at depositions

Samsung's source code is among the most guarded business assets in the world, and Samsung goes to great lengths to protect its "crown jewels" from leaks and hackers. *See Catch a Wave Techs., Inc. v. Sirius XM Radio, Inc.*, No. 3:12-cv-05791, 2013 U.S. Dist. LEXIS 189086, at *2 (N.D. Cal. Aug. 6, 2013) (holding that the "disclosure of confidential, 'crown jewel' technology . . . is a burden to which parties must submit" but it requires additional layers of protection). Portions of the proposed protective order in this case (to which plaintiff has agreed) mandate that the source code computer must remain in a locked room with no cameras, voice recorders, cellular telephones, or devices capable of accessing the internet, and further requires persons entering the secure source code room to submit to reasonable security measures to insure compliance. *See* PO ¶ 12(f) ("No other electronic devices shall be permitted in the secure room, including but not limited to laptops, floppy disks or drives, zip drives, cellular telephones, personal digital assistants, Blackberries, cameras, voice recorders, Dictaphones, telephone jacks, USB memory sticks, any other camera-enabled devices, CDs, portable hard drives, or any devices that can access the Internet or any other network or external system. . . All persons entering the locked room containing the Source Code must agree to submit to reasonable security measures to insure they are not carrying any prohibited items before they will be given access to the locked room.")

7

Despite these necessary security measures, to which Plaintiff has agreed, Plaintiff now seeks to have Samsung remove the source code computer from the locked room and travel with its attorneys to deposition sites that would not be secure. Plaintiff also seeks to have the source code computer present in a room in which a videographer, court reporter, and presumably Plaintiff's counsel would be in possession of cameras and other prohibited devices in contravention of security measures that both parties agree are necessary. *See Geotag*, 2013 U.S. District LEXIS 25774, at *264 (recognizing the presence of cellular phones and computers significantly increase the likelihood of inadvertent disclosure). Further, Plaintiff's proposal that Samsung must move the source code computer containing the entirety of the source code to the site of any designated deposition exposes the source code to an unnecessarily high risk of inadvertent disclosure. Once made public, this highly sensitive source code could be readily copied or published over the Internet; it is highly susceptible to viral exposure to the public in a way that could never be contained or remedied. This risk greatly outweighs any purported convenience to Plaintiff. FISI will have ample opportunity to have up to 7 experts, who can readily ascertain the source code that is allegedly relevant in this case, review Samsung's source code prior to any deposition. PO ¶ 12(e)(ii). Samsung proposes that Plaintiff may request 500 pages of source code printouts, including 27 consecutive pages. *Id.* ¶ 12(i). Samsung has also agreed to provide two additional sets or subsets of source code printouts at Plaintiff's request, and included a provision in the protective order to allow Plaintiff to requests printouts above and beyond that 500 page limit. *Id.* This provides the means for Plaintiff's counsel to question witnesses about the source code, while avoiding the additional risk of moving the source code computer to depositions, which greatly outweighs any alleged burden to Plaintiff. For these reasons, the Court should adopt Samsung's proposal.

### 3. Number of source code computers and peripheral equipment

Samsung's proposes that the producing party need only provide a single stand-alone computer, which is consistent with the Court's sample protective order. By contrast, FISI proposes that the Court require the producing party to supply at least two stand-alone computers, which is contrary to the Court's sample protective order, and will subject Samsung's source code to unnecessary risk. The source code protections provided under the sample protective order are there to ensure that the producing party's source code—its crown jewels—is adequately protected. FISI's proposal subjects Samsung to additional risk by providing an additional copy of the code on a separate computer, essentially doubling the risk of inadvertent disclosure. FISI's only justification that it articulated to Samsung was that in a previous case, a source code computers had technical issues and became hard to use for review. However, this does not support FISI's proposal for two source code computers from the outset; should there be an issue with the source code computer, Samsung will resolve it. FISI may also point to the protective order in the *TiVo* litigation, but that was a different case with different needs. The *TiVo* litigation involved patents related to television graphical user interfaces, multimedia time warping systems, and other such patents that are highly related to software. FISI, by contrast, has accused battery charging in this case, which it alleges is performed at least in large part by third-party chips called PMICs, not primarily through software. Therefore, the scope of source code review in the *TiVo* litigation cannot be compared to that here, and FISI's reliance on the *TiVo* protective order should be rejected.

In addition, FISI's proposal adds both complexity and expense by requiring the producing party to both acquire two separate computers and to maintain them, including keeping the source code computers secure, loaded with the required review software and the produced source code. Compounding this issue, FISI seeks this Court to order that both computers be

furnished with a full-size keyboard, mouse, and two at least twenty-two inch (22") widescreen LCD monitors. The additional expense of both supplying this equipment and storing/maintaining it is unduly burdensome.

In sum, FISI's proposal subjects Samsung's source code to unnecessary risks and is unduly burdensome. Therefore, the Court should reject FISI's proposal.

**B. German Actions**

FISI proposes using highly confidential Samsung (and third-party) productions from this case—including source code—in German actions against Samsung Elecs. GmbH, Cyberport GmbH, and notebooksbilliger.de AG. FISI's proposal is unduly intrusive and burdensome, and robs Samsung of one of the most basic protections afforded by a protective order: that their highly confidential information is only to be used for purposes of the litigation in which it was produced. FISI has not shown that a protective order exists in the German actions, let alone one with the same level of protection as the proposed order, to safeguard Samsung and third party confidential information. Nor has FISI shown this court can enforce this order against German courts, German counsel, or the myriad foreign individuals who may have access under FISI's proposal, including the other litigants in those proceedings (*e.g.* Cyberport GmbH and notebooksbilliger.de). Moreover, FISI proposal allows for any documents produced in this litigation to be provided and used in the German litigation without a showing that a single document—much less every document, source code file, and transcript produced by Samsung or any third party—is relevant to the German litigations. FISI should not be permitted to engage in a fishing expedition for its German litigations under the guise of discovery in this litigation.

If FISI believes that particular documents—not Samsung's and any third party's production as a whole—should be shared in the German litigation, it should move the Court to modify the protective order to allow for those narrowly tailored documents to be shared in the

German litigation. *See In re Posco*, 794 F.3d 1372, 1377 (Fed. Cir. 2015). At that later time, FISI must show, at a minimum, that its specific proposal encompasses only documents that are relevant and necessary in the particular German litigation to which it seeks to share the document, and that its proposal does not violate any export laws. *See*, *e.g.*, 15 C.F.R. § 736. Moreover, FISI must show that 28 U.S.C. § 1782 and the so-called *Intel* factors are satisfied: when a party requests modification of a protective order to use materials in a foreign proceeding, the Court must consider "(1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the . . . request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the request is otherwise unduly intrusive or burdensome." *Posco*, 794 F.3d at 1377. (citing *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004); internal quotations omitted).

Here—while the Court should not reach this issue because FISI has not made a tailored request or satisfied the other prerequisites—the *Intel* factors counsel against using confidential information from this case in the German actions. *See*, *e.g.*, *Via Vadis*, 2013 WL 646236, at *1-3 (denying a motion to provide confidential discovery in a U.S. litigation for use in a German litigation). For example, the first *Intel* factor weighs against allowing use of the U.S. discovery in Germany at least because FISI is a party to the German litigations, and "the [need to provide documents in a foreign litigation] generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant" because "[the] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." *Intel*, 542 U.S. at 264.

11

The second *Intel* factor also weighs against allowing use of the U.S. discovery in the German actions for at least the following reasons.  First, there is no showing that the German litigations will provide the level of protection as the Protective Order in this case.  Moreover, the fact that FISI proposes a provision that would release a wide range of highly confidential discovery—including source code—without first making tailored litigation requests in the German proceeding also weighs against FISI's proposal.  *See Lazaridis v. Int'l Ctr. for Missing & Exploited Children, Inc.*, 760 F. Supp. 2d 109, 115-16 (D.D.C. 2011), *aff'd sub nom. In re Application for an Order Pursuant to 28 U.S.C. § 1782*, 473 F. App'x 2 (D.C. Cir. 2012) (denying a § 1782 request where the requesters' participation in the foreign proceeding and wide-ranging requests suggested that the information sought was not narrowly tailored and instead "more for his general use").  Indeed, FISI seeks broad ranging discovery not only from Samsung, but from a number of third parties that FISI has already subpoenaed, and FISI will presumably subpoena additional third parties.

The third *Intel* factor also weighs against use of the U.S. discovery in Germany at least because FISI's proposal is an attempt to circumvent discovery restrictions and policies in Germany.  *See In re Mare Shipping*, No. 13 Misc. 238, 2013 WL 5761104, at *5 (S.D.N.Y. Oct. 23, 2013), at *5 (denying request where "[the applicants] appear to attempt to circumvent Spanish proof-gathering restrictions by seeking documents and deposition testimony here, rather than in Spain.").

Finally, the fourth *Intel* factor weighs against the use of the U.S. discovery in Germany at least because FISI will be able to use the permissive discovery procedures in the U.S. to seek unduly intrusive and burdensome discovery from Samsung and third parties that is relevant only in its German litigations.  Moreover, as discussed above, FISI has not shown a protective order

exists in the German actions, let alone one with the same level of protection as the proposed order, to safeguard Samsung and third party confidential information. Nor has FISI shown this court can enforce this order against German courts, German counsel, or the myriad foreign individuals who may have access under FISI's proposal, including the other litigants in those proceedings (*e.g.* Cyberport GmbH and notebooksbilliger.de).

In sum, FISI's proposal with respect to the German actions should be denied

### C. Third-Party Notice

To the extent that Samsung produces documents subject to third party confidentiality obligations, FISI's proposal contemplates notice to the third parties within two days of entering the protective order. This provision is not present in the Court's sample protective order and is not proportional to the needs of this case. For example, the deadline to produce P.R. 3-4 documents is August 9, 2017, but FISI would require identification of all P.R. 3-4 documents now to determine if they involve third party confidentiality and proceed with notice. Further, the date for substantial completion of discovery is currently set for December 1, 2017, and FISI's proposal would require identification of all third-party confidential documents now, which is unreasonable. Samsung proposes the Court's sample protective order is sufficient, without imposing a ridged two day notice divorced from the schedule and issues in this case.[7]

In addition to the two-day notice period, FISI's proposal includes a complicated process for providing notice to third parties and resolving confidentiality disputes that includes rigid pre-set timelines. But this case is no different from all of the others before this Court or other courts

---

[7] FISI's proposed footnote 2 does not resolve this concern. Even with this footnote, there is a real risk that discovery of third-party confidential documents uncovered later in the case through Samsung's good-faith investigation could be attempted to be characterized as a violation of the protective order. There is no justification for creating this ambiguity or imposing restrictions beyond those that govern any other case.

around the country, and FISI provides no sound justification to modify the default rules and practice that govern production of third-party confidential documents in all other cases. FISI's proposal is overly restrictive at least because a cookie-cutter procedure and timeline for resolving all third-party confidentiality issues does not comport with the realities facing litigants such as Samsung. While Samsung is diligently investigating the documents relevant to this case, and at the same time any confidentiality obligations that it owes regarding those documents, it has a very real concern that FISI's proposal could force Samsung to violate the timelines and other provisions in its confidentiality agreements for some documents. Therefore, the Court should, as it does in all other cases, provide an amount of flexibility such that the parties can simultaneously satisfy their respective duties to produce documents on the one hand, and to address confidentiality obligations on the other. Samsung (and we expect FISI) will keep the other party informed as to the status of any confidentiality disputes, and can address any issues if and when they come up. The Court should therefore reject FISI's proposal.